# MARYLAND REPORTS.

## DECEMBER TERM, A. D., 1853.

### NEILSON POE, Garn. of DENNIS C. LIENTARD, vs. LEVI DUCK.

A contract made in Maryland between a citizen of this State, (the debtor,) and a citizen of another State, (the creditor,) whether it be regarded as a Maryland contract or not, is not affected by a discharge of the debtor under the insolvent laws of this State, because the creditor is a *citizen* of another State.

Whatever operates to discharge the contract according to the law of the place where it is made or to be performed, discharges it everywhere.

The fact that the foreign creditor brings suit upon his contract in the courts of this State, does not subject his contract, or the judgment obtained upon it, to the operation of our insolvent laws.

State insolvent laws apply to all contracts made within the State between citizens of the State, but not to those made within a State between a citizen of that State and one of another, nor to those not made within the State.

APPEAL from Baltimore county court.

This was an *attachment*, sued out of Baltimore county court by the appellee, Duck, upon a judgment recovered by him in said court against Lientard, upon the promissory note set out in the opinion of this court. The writ was laid in the hands of Poe, as garnishee, who appeared and pleaded *nul tiel record*, and *nulla bona* of defendant in his hands, upon which issues were joined.

*Exception.* The plaintiff offered in evidence the record of the judgment upon which the attachment issued, and it was admitted that Lientard, after its recovery, to wit, on the 16th of October 1849, applied for the benefit of the insolvent laws

1      v.5

of Maryland, and that Poe was duly appointed his permanent trustee, and has in his hands funds sufficient to pay the attachment if they are liable thereto, and that Duck was, at the time of making the contract, and still is, a citizen of Pennsylvania. The garnishee then asked the instruction set out in the opinion of this court, which the court below, (FRICK, C. J., and LE GRAND, A. J.,) refused to give, and this refusal constitutes the only exception in the case. The verdict and judgment was in favor of the plaintiff, and the garnishee appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Levin Gale* for the appellant, contended, that the prayer should have been granted, because:

1st. The contract on which the judgment was obtained by the appellee against Lientard, was made, and to be performed, in Maryland, and is now sought to be enforced here. *Story's Conflict of Laws*, sec. 317. 12 *New Hamp.*, 520, *Bank of Orange County vs. Colby*. 8 *Johns. Rep.*, 189, *Thompson vs. Ketcham*. A citizen of another State cannot come here and make a contract, and then throw off our laws subject to which it is made. If he makes an *usurious* contract, it is clearly subject to the laws of this State. In this very case the appellee knew he was making a contract subject to our laws, for he procured the note to be *stamped* according to their requirements.

2nd. The contract is therefore governed by the laws of Maryland, and the insolvent laws under which Lientard was discharged having been passed prior to the contract, they either *entered into and formed a part of it*, or *controlled it at its formation, so as to subject it to said laws*, and therefore the discharge thereunder did not violate or impair the obligation of the contract. The power over the contract results from its being made in the State, and not from the citizenship of the parties. 1 *Wash. C. C. Rep.*, 340, *Camfranque vs. Bur-*

nell. 1 *Howard* 315, *Bronson vs. Kinzie.* 1 *Cowen*, 103, *Sherrill vs. Hopkins.* 19 *Wend.*, 150, *Parkinson vs. Scoville.* 3 *Cowen*, 147, *Raymond vs. Merchant.* 12 *Johns. Rep.*, 142, *Hicks vs. Brown.* The final opinion of *Judge Johnson*, in the case of *Ogden vs. Saunders*, 12 *Wheat.*, 358, is relied upon by the other side as a conclusive authority, that State insolvent laws bind *only citizens* of the State in which they are enacted. This decision has given rise to more discussion than any case in the books. The opinions of *Judge Washington*, 259, 264, 265; of *Judge Thompson*, 297, 298, 299; of *Judge Trimble*, 321, 324, 325; and of *Judge Johnson*, 282, 284, 285, show upon what ground that decision was placed. See also 12 *Wheat.*, 369, *Shaw vs. Robins*, and 1 *Kent's Com.*, 465. The opinion of *Chief Justice Marshall*, 333, shows that the case is *positive* authority only so far as the *facts* of the case go. It does not *decide* the question at issue here, and the *Supreme Court itself*, in 5 *Howard*, 295, 307, *Cook vs. Moffat*, has refused to recognise the authority of *Ogden vs. Saunders* on this point.

*C. D. Barnitz* for the appellee. There have been several decisions in Maryland, that where the contract and the citizenship are *both* foreign, the insolvent laws do not affect it. There is no evidence in this case that the contract was made in this State, except the fact of the note being dated here, which is not sufficient to make it a Maryland contract. But the single question, whether the foreign citizenship *alone* will protect the contract, ought now to be decided. I insist that it does. State insolvent laws can operate but upon two classes of persons:—1st, those who assent to the operation of such laws, by participating in proceedings had under them, 3 *Peters' Rep.*, 411, *Clay vs. Smith;* and 2nd, all citizens of the State where such laws are enacted, because they are a part of the law making power of the State, 1 *Cush. Rep.*, 430, *Brigham vs. Henderson.* As to citizens of other States, they are inoperative and null under the constitution of the United States. The very question raised here was decided by the Supreme

Court, in *Ogden vs. Saunders.* The contract in that case "*was made and to be executed in the State of New York*," and the question was, whether a discharge under the insolvent laws of New York, "would bar" a suit upon it by the plaintiff who was a resident of Kentucky? (12 *Wheat.*, 293,) and it was decided that it *did not.* In *Boyle vs. Zacharie*, 6 *Peters*, 348, the Supreme Court affirm the final opinion of *Justice Johnson,* in *Ogden vs. Saunders,* and say, "whatever principles are established in that opinion are to be considered no longer open for controversy, but the settled law of the court." In *Frey vs. Kirk,* 4 *G. & J.,* 509, our own Court of Appeals adopts the case of *Ogden vs. Saunders,* and say it is the final and conclusive law of this State. See also 3 *Story's Com. on the Cons.,* secs. 1110, 1384, and 2 *Story's Rep.,* 383, *Springer vs. Foster,* where the same view of that case is adopted by *Mr. Justice Story.* See also 4 *Wheat.,* 122, *Sturges vs. Crowninshield,* 5 *Cush.,* 83, *Tebbetts vs. Pickering.* 8 *Pick.,* 194, *Braynard vs. Marshall.* 10 *Metcalf,* 594, *Savage vs. Mark.* 2 *Blackford,* 394, *Pugh vs. Busel,* and 5 *Gill,* 441, *Larrabee vs. Talbott.* 1 *Md. Ch. Decisions,* 281, *Potter vs. Kerr.* 2 *Md. Rep,* 457, *Owens vs. Sprigg.*

TUCK, J., delivered the opinion of this court.

This case commenced by an attachment issued at the instance of the appellee, to affect funds in the hands of the appellant, as the trustee in insolvency of Dennis C. Lientard, a debtor of the appellee.

It appears that Duck, in May 1849, recovered judgment in Baltimore county court against Lientard, on the following promissory note:

"BALTIMORE, *Sept.* 14, 1848.

Three months after date I promise to pay Levi Duck, or order, one hundred and eight dollars, and ten cents, for value rec'd.                    DENNIS C. LIENTARD."

That at the date of the note, up to and at the time of the trial, Duck was a citizen of Pennsylvania; that the maker of the note applied for the benefit of the insolvent laws in Octo-

ber 1849, upon which the appellant was appointed his trustee, and that he has in hand, of the insolvent's estate, sufficient to pay this claim, if condemnation be awarded to the appellee. Upon these facts the garnishee asked the court to instruct the jury, "that if from the evidence they shall find that Lientard applied for the benefit of the insolvent laws of Maryland, and that the funds attached in the hands of the garnishee came into his possession as trustee under said application; and shall further find, that the contract on which judgment was recovered by the said plaintiff against Lientard, was made and contracted within the State of Maryland before said application, then the plaintiff is not entitled to recover against the garnishee, although the jury also find that the plaintiff was, at the time of making the contract, and has been ever since, a citizen of the State of Pennsylvania," which instruc-tion the court below refused.

The counsel for the appellant contends, that the contract on which the judgment was obtained by the appellee against Lientard, was made and to be performed in Maryland, and that, being a Maryland contract, the discharge of the debtor under her insolvent laws does not impair its obligation. On the part of the appellee it is insisted, that whether the con-tract be a domestic one or not, the discharge is inoperative as to citizens of other States.

We think that the judgment of the court below must be affirmed, because the creditor is a citizen of another State, and shall not express any opinion on the question whether the contract is a Maryland one or not. The cases referred to by the appellant's counsel on this point, are not precisely the same with the present, though they seem to sanction the doctrine advanced by him; but a different opinion was ex-pressed in *Goodwin vs. Holbrook*, 4 *Wend.*, 377, where the parties to a contract lived in different places, and a question arose as to the place of performance, the contract being silent on that point, and the court held, that if the payment had been to be made in money, there could not have been a doubt as to the place of performance; it would have been the duty

of the defendant to seek the plaintiff in order to make the payment. And so in *Towne vs. Smith*, 1 *Woodbury and Minot*, 128, Woodbury, J., in discussing the constitutionality of State insolvent laws, refers to *Braynard vs. Marshall*, 8 *Pick.*, 194, as having decided that a negotiable note, not restricted on its face to be paid within the State, may be considered as payable wherever the indorsee may live, and is not affected by a subsequent discharge in the State where the contract was made. He refers, however, to several cases as opposing this doctrine, and intimates that, on this and other doubtful points, it may be proper, on the principle of the common law, to lean towards vigilant creditors, as against others less watchful, and against such debtors as have been improvident. Without adopting this suggestion, we deem it unnecessary to determine the point in the present cause, and shall consider whether this discharge was invalid as against Duck, merely because he was a citizen of another State.

It is unnecessary to examine the cases commented upon at the bar, for the purpose of ascertaining how far they can be reconciled, because, whatever discussion has taken place upon the supposed conflict of opinion among the judges of the Supreme Court of the United States, in the several cases in which the constitutionality of State insolvent laws has been considered, it is no longer to be doubted that the ultimate opinion delivered by Mr. Justice Johnson, in *Ogden vs. Saunders*, 12 *Wheaton*, 358, has settled the law upon the points there stated. *Boyle vs. Zacharie and Turner*, 6 *Peters*, 348, 634. *Cook vs. Moffat*, 5 *Howard*, 307. *Frey vs. Kirk*, 4 *Gill and Johns.*, 509. *Larrabee vs. Talbott*, 5 *Gill*, 441. In 6 *Peters*, 348, Marshall, C. J., uses this very explicit language: "That opinion is to be deemed the opinion of the other judges who assented to that judgment. Whatever principles are established in that opinion are to be considered no longer open for controversy, but the settled law of the court."

The counsel for the appellant, however, insists, that the question now before the court is not covered by that opinion.

In this view of the case we do not concur.    If we are correct in supposing that no reliance was placed on the fact that the discharge obtained in New York was set up, not in that State, but in another, (and of this we think there can be no doubt, because what would operate to discharge the contract, according to the law of the place where made or to be performed, would discharge it everywhere, *Confl. Laws, sec.* 331,) there was, according to the facts of the case, no other question for decision than the validity of the discharge as against a foreign creditor, the contract having been made and the discharge having been obtained in the same State.

If this be treated as a contract to be performed in Maryland, because dated here, there will be discovered no substantial difference between this case and *Ogden vs. Saunders*, except that here the discharge is relied upon in a State court of the place of the contract, and in that cause it was obtained in New York, but pleaded in the district court of Louisiana, the discharge in each case having been obtained in the State where the contract was made.    This is a note made in Maryland, payable to a citizen of Pennsylvania.    In *Ogden vs. Saunders*, the cause of action was a bill of exchange drawn in Kentucky on Ogden, a citizen of New York, and there accepted by him, in favor of Saunders, a citizen of Kentucky, by which, as far as the acceptor was concerned, it became a New York contract.    (See *Lizardi vs. Cohen*, 3 *Gill*, 438. *Confl. Laws, secs.* 317, 319.)    The Supreme Court held, that such discharge was inoperative as against Saunders.    We do not find that any notice was taken of the fact that the discharge was set up in a State other than that in which it had been obtained.    Nor is this circumstance alluded to in any of the subsequent cases as having entered into the conclusions to which the majority of the court arrived.

That opinion has been frequently examined, and sometimes objected to, but not so much on account of difficulty in ascertaining what it decided, as because judges have not sanctioned its conclusions, or agreed with the course of reasoning by which these results were arrived at.    The judge says:

"The question now to be considered is, whether a discharge of a debtor under a State insolvent law, would be valid against a creditor or citizen of another State, who has never voluntarily subjected himself to the State laws, otherwise than by the origin of his contract." We are not to suppose that it was meant to deny the right of a foreign creditor to sue in the State courts, except at the expense of the very preference which he was seeking to enforce, as secured by the constitution. It would be a mere mockery to accord to him a privilege over the domestic creditors; as the holder of a promissory note, and then deny to him its enjoyment the moment he sought to avail himself of the right by legal process. It is now understood that it makes no difference whether the creditor sues in a Federal or State court. In either his preference is recognised, except where he comes in for his dividend, or asserts his claim under the proceedings in insolvency. Owens vs. Bowie, 2 Md. Rep., 457, and the cases cited.

The reasoning of the judge and his reference to cases show, that he was considering the extra-territorial effect of laws of this description, upon the rights of citizens of other States, merely as such non-residents, and without reference to the place of the contract. We are informed by him that the courts of this country, upon international principles, had discarded the doctrine of the English courts, by which the discharge of a bankrupt is held to be effectual against contracts of the State that gives the discharge, whatsoever may be the allegiance or country of the creditor. Proceeding to treat the question as affected by the provisions of the constitution, he considers that the evils that might grow out of the assertion of a power over the rights of citizens of other States, upon the doctrine of jurisdiction of courts over contracts, will be avoided, if the power of States over contracts, after they become the subject exclusively of judicial cognizance, is limited to the controversies of their own citizens, beyond which they cannot advance without deciding upon the rights of persons, without giving them a sufficient oppor-

Poe, Garn. of Lientard, vs. Duck.

tunity of being heard. And, concluding this branch of the case, he considered "the discharge under a State law as incompetent to discharge a debt due a citizen of another State;" and that, as between citizens of the same State, a discharge of a bankrupt by the law of that State, is valid as it affects posterior contracts; that as against creditors, citizens of other States, it is invalid as to all contracts.

To show that this point was decided in that case, we need only adduce the testimony of one of the eminent jurists who concurred in the opinion. Judge Story, in 3 *Comm. on Const.*, *sec.* 1103, says: "No State can introduce any system which shall extend beyond its own territorial limits, and the persons who are subject to its jurisdiction. Creditors residing in other States cannot be bound by its laws." See also *sec.* 1110. And, at *sec.* 1384, in treating of this subject more at large, and giving the result of the various decisions, he says, that insolvent laws apply to all contracts made within the State, between citizens of the State; that they do not apply to those made within a State between a citizen of that State, and one of another State; and that they do not apply to contracts not made within the State. For which he refers to *Ogden vs. Saunders*, 12 *Wheat.*, 358. *M'Millan vs. M'Neill*, 4 *Do.*, 209. See also *Confl. Laws*, 341. And more recently, sitting in the case of *Springer vs. Foster*, 2 *Story's Rep.*, 383, he declared it to be "the settled doctrine of the Supreme Court, that no State insolvent laws can discharge the obligations of any contract made in the State, except such contracts as are made between citizens of that State; and that such was the decision in the case of *Ogden vs. Saunders*, afterwards affirmed in *Boyle vs. Zacharie and Turner*, 6 *Peters*, 348." This interpretation of Judge Johnson's opinion is also recognised in 1 *Woodbury and Minot*, 124; 1 *Cushing*, 430; 5 *Do.*, 83; 2 *Blackf.*, 394; and in several other cases referred to in these decisions.

In the case of *White, et al., vs. Winn and Ross*, before the Circuit Court, this question arose, and must have been decided in favor of the foreign creditors on the ground of citizenship

alone, because it was a case of a Maryland contract, the judgment on which the attachment was issued having been recovered on bills of exchange drawn in Pennsylvania, but accepted in Maryland, in favor of the plaintiffs, citizens of Pennsylvania. See 8 *Gill,* 499. 2 *Md. Rep.,* 468. This was precisely the state of case in *Ogden vs. Saunders,* with the exception that the discharge was relied upon in Louisiana. No allusion whatever is made by his honor, Judge Taney, to any other ground for his opinion, but he says, (8 *Gill,* 501,) "it is to be assumed that the plaintiffs, as citizens of Pennsylvania, are not bound by Jones' application for the benefit of the insolvent laws. They may deny the validity of the proceeding."

This view of the law is also taken by the Court of Appeals, in *Frey vs. Kirk,* 4 *Gill and Johns.,* 519, where it is said that one of the principles deducible from the decision in *Ogden vs. Saunders,* is, that State insolvent laws, though constitutional in their action upon the rights of their own citizens, are unconstitutional when they affect the rights of citizens of other States, and that as to these they are invalid as to all contracts. In that case the creditor was a citizen of Pennsylvania, and the note was drawn payable in that State. But, as we understand the opinion, the discharge of the debtor in Maryland was held to be invalid, not only because, according to *Boyle vs. Zacharie and Turner,* it affected a Pennsylvania contract, but also because, according to *Ogden vs. Saunders,* it affected the rights of a citizen of another State, independently of the place of the contract. We do not find that any court has entertained a different view in regard to the ultimate opinion of the court in *Ogden vs. Saunders,* than we have here expressed. As far as we have examined the cases they agree that, upon its authority, the discharge is invalid when set up against a citizen of another State.

*Judgment affirmed.*