35   457
72   545

WHITNEY & al. v. WHITING & al.

A discharge, under the insolvent laws of Massachusetts, is no bar to a suit upon a judgment rendered in Massachusetts against citizens of that State, in favor of those who have ever been citizens of Maine, upon drafts or bills of exchange drawn by the plaintiffs in Boston upon the defendants in Boston, and by the defendants there accepted, payable generally to the order of the plaintiffs, but not paid, although obtained after the rendition of that judgment.

The rights and liabilities of the parties are in no way changed by the conversion of the original indebtedness upon drafts or bills of exchange into a judgment.

The clause of the Constitution of the United States, prohibiting the several States from passing any law impairing the obligation of contracts, should be so construed as effectually to protect citizens of the United States, resident in any State, creditors of citizens resident in other States, against the operation of the insolvent laws of the States of their debtors, in all cases where their constitutional privileges have not been in some way waived.

If a discharge under State insolvent laws be holden effectual to extinguish all contracts made within the State between its own citizens, unless those contracts are negotiable, and by their express terms to be performed in other States, and, without being discredited, have been actually sold and assigned to citizens of other States prior to the proceedings resulting in such discharge ; and if such discharge be holden inoperative to destroy the obligation of contracts made within the State where it is granted, between citizens of that State and those of other States, unless the holders thereof have in some way

waived their constitutional rights ; and likewise inoperative to defeat contracts made and to be performed without the State, unless made and continuing to exist between citizens of that State down to the period of the proceedings resulting in such discharge ; the true purpose and design of the constitutional inhibition will be accomplished, and the sovereignty of the States, so far as consistent with the Constitution, vindicated.

DEBT, on a judgment recovered by the plaintiffs against the defendants at the Court of Common Pleas held at Boston, in and for the County of Suffolk and Commonwealth of Massachusetts, on the first Tuesday of January, 1850. The defendant, Faxon, on whom alone process had been served in this action, pleaded, in bar to the action, a discharge under the insolvent laws of Massachusetts, obtained since the recovery of said judgment.

The judgment in suit was founded on two drafts, drawn by the plaintiffs, who, at the date of the same, and ever since, have been citizens of Calais, in the State of Maine, upon the defendants, citizens of Boston, in the Commonwealth of Massachusetts, which were accepted by the defendants and not paid at maturity, copies of which are hereto annexed. The plaintiffs were the owners of the drafts when drawn, and down to the maturity of the same, and ever since, they having never negotiated the same nor parted with the same. The drafts were drawn by the plaintiffs upon the defendants against the proceeds of lumber shipped by the plaintiffs at Calais, and consigned to the defendants for sale, and by them sold.

After the recovery of said judgment, the defendant, Faxon, obtained a discharge under the provisions of the insolvent laws of Massachusetts. The plaintiffs did not prove their claim against the estate of said Faxon, or take any part in the proceedings in insolvency.

If upon these facts the action cannot be maintained, judgment of nonsuit is to be rendered against the plaintiffs. But if upon these facts the action can be maintained, judgment is to be rendered for the plaintiffs, unless the defendant shall wish to contest the facts in regard to the ownership of the drafts at the time

Whitney *v.* Whiting.

they were drawn, and afterwards, which he is at liberty to do if he shall so wish.

(COPY.)

$178.98. BOSTON, Sept. 15, 1848.

Four months after date, pay to our own order one hundred and seventy-eight and ninety-eight one hundredths dollars, value received, which place to account of

Your obedient servants,

WHITNEY & PEASLEE.

To Messrs. Jas. Whiting & Co., Boston, Mass.

Interest, $11.63.

Indorsed, WHITNEY & PEASLEE.

Accepted. James Whiting & Co.

(COPY.)

$189.48. BOSTON, Oct. 18, 1848.

Four months after date, pay to our own order one hundred and eighty-nine and forty-eight one hundredths dollars, value received, which place to account of

Your obedient servants,

WHITNEY & PEASLEE.

To Messrs. Jas. Whiting & Co., Boston, Mass.

Interest, $10.36.

Indorsed, WHITNEY & PEASLEE.

Accepted. James Whiting & Co.

*Hutchins & Wheeler,* (with whom was *F. Vose,*) for the plaintiffs.

The only question in this case is, whether the defendant Faxon is discharged from the judgment in suit by a discharge obtained under the provisions of the insolvent laws of Massachusetts.

It is admitted that the plaintiffs are, and always have been, citizens of Maine. This being so, the discharge obtained by the defendant in Massachusetts could not affect their claim. The contract upon which the judgment was founded was between citizens of Maine and citizens of Massachusetts, and was not,

therefore, subject to the operation of the Massachusetts insol-vent laws. *Blanchard* v. *Russell*, 13 Mass. 1; *Braynard* v. *Marshall*, 8 Pick. 194; *Tebbetts* v. *Pickering*, 5 Cush. 83; *Woodbridge* v. *Allen*, 12 Met. 594; *Fiske* v. *Foster*, Ibid. 597; *Ilsley* v. *Merriam*, 7 Cush. 242; S. C., 4 Law Reporter, N. S., 37; *Clark* v. *Hatch*, 7 Cush. 455; *Cork* v. *Moffat*, 5 Howard 295 (16 Curtis 405); *Springer* v. *Foster*, 2 Story 383; S. C., 6 Law Reporter 107; *Town* v. *Smith*, 1 Wood & Minot 115; S. C., 9 Law Reporter 12; *Poe* v. *Duck*, 5 Maryland 1; *Donelly* v. *Clark*, 3 Selden (N. Y.) 500.

The drafts were not payable in Massachusetts, therefore differing from the case *Scribner* v. *Fisher*, 2 Gray 43.

The fact that suit was brought in Massachusetts, and judgment recorded there upon the drafts, does not subject the claim to the operation of the Massachusetts insolvent laws, if the claim itself was not subject to be discharged by the provisions of those laws. *Poe* v. *Duck*, 5 Maryland 1.

If the plaintiffs had proved the claim under the proceedings in insolvency, it would have been discharged. The case finds that that was not done.

The case of *Stevens* v. *Norris*, 10 Foster 466, has no bearing, as the parties in that case were both citizens of Massachusetts at the time the contract was made, and the note was made and made payable in that State.

*Cushing*, for the defendants.

1. The contract was made in the State of Massachusetts, as appears on its face. It was also to be performed in Massachusetts. 3 Kent's Com. 95, note *a*. *Kent* says: "In the case of *Bronson* v. *Kenzie*, 1 Howard's U. S. 311, it was conceded that contracts made subsequent to the Stay-law of Illinois were to be governed by them, if made to be executed in the State, for every State may prescribe the legal and equitable obligations of a contract to be made and executed within it." 1 Kent 422, note *b*; *Rowe* v. *Young*, 2 Brod. & Bingham 180. Lord *Redes-*

*dale* says, (6 Eng. Com. Law 61,) "If he accepted simply, he would engage only to have the money at Torpoint."

*Best*, C. J., same case, says : "Before I dismiss this point I would state that in my humble opinion it imports the holder of a general acceptance to present his bill at the residence or place of trade of the acceptor. The qualified acceptance produces no other effect than that of changing the place of presentation from the counting-house of the acceptor to that of the acceptor's bankers. *Wilmot* v. *Williams,* 7 Manning & Granger 1017, note *b.*

2. The contract being made in Massachusetts, and to be performed there, the *lex loci contractus* must govern. 2 Kent's Com. 459, *et seq.,* and notes.

3. By the law of Massachusetts the contract is discharged. See law as pleaded in *Scribner* v. *Fisher,* 2 Gray 43.

4. The court will look behind the judgment, to see what the original cause of action was. *Betts* v. *Bagley,* 12 Pick. 572.

FOWLER, J. The single question involved in this case is, whether a discharge, obtained subsequently to its rendition, under the insolvent laws of Massachusetts, is a bar to a suit here upon a judgment rendered in Massachusetts against citizens of that State, in favor of the plaintiffs, who have ever been citizens of Maine, founded upon drafts or bills of exchange, drawn by the plaintiffs in Boston upon the defendants in Boston, and by the defendants there accepted, payable generally, but not paid.

The fact that the original indebtedness upon the drafts or bills has been converted into a judgment, in no way changes the legal rights or liabilities of the parties. A contract upon which a transitory action arises is not rendered local by a judgment recovered upon it. But as evidence of a debt, *primâ facie* or conclusive, the implied promise arising upon a judgment seems to be no more local than any other contract is, whether express or implied. By the judgment in Massachusetts, the demand of the plaintiffs against the defendants passed in *rem judicatam,* but the judgment, until reversed or satisfied, is evidence of a

contract between the same parties, provable in another form, with the same effect. The judgment is adduced here as evidence of a just demand, and to obtain a remedy to enforce it according to our laws; and the insolvent laws of Massachusetts, or the protection under them enjoyed by the defendants there, are no answer in this State to an action upon this judgment, unless the debt, as well as the remedy upon it, have been abolished and defeated by the proceedings in insolvency. Its having passed into a judgment in Massachusetts does not make the debt sought to be recovered any less a debt due from citizens of Massachusetts to citizens of Maine, than if it had remained evidenced by the original drafts or bills of exchange. The character of the debt, as due from citizens of one State to those of another, is not affected by the judgment, but the court will look behind the judgment to the original contract. *Watson* v. *Bounce*, 10 Mass. 339, 340; *Poe* v. *Duck*, 5 Md. Rep. 1; *Potter* v. *Kerr*, 1 Md. Ch., Dec., 275; *Betts* v. *Bradley*, 12 Pick. 572; *Wyman* v. *Mitchell*, 1 Cowen 316.

The question, therefore, stands precisely as it would if the present suit were founded upon the original bills or drafts, and brought to recover of the defendants the amount due thereon; and the point for decision is, whether a discharge in insolvency, obtained by the defendant, Faxon, under the laws of Massachusetts, passed in 1838, is a bar to a recovery against him by the plaintiffs, now and always citizens of Maine, upon the drafts or bills of exchange upon which the former judgment was rendered in Massachusetts.

It is undoubtedly true, as a general principle, that the *lex loci contractus* must determine the construction to be given to it, and the obligation and duty it imposes, as well as what shall be a valid discharge of it, or a sufficient defence to an action upon it. *Bank* v. *Colby*, 12 N. H. 520; *Bliss* v. *Houghton*, 13 N. H. 126; *Stevens* v. *Norris*, 10 Foster 466.

But the general rule has always been recognized in this State, that where it appears, from the express terms of a contract, that it was to be executed in a different country from that in which it

was made, its validity and obligation are to be tested by the laws of the place where it is to be executed. *Houghton* v. *Page*, 2 N. H. 42 ; *Dyer* v. *Hunt*, 5 N. H. 401 ; *Douglas* v. *Oldham*, 6 N. H. 150 ; *Dow* v. *Rowell*, 12 N. H. 49 ; *Stevens* v. *Norris*, 10 Foster 466.

In the case before us, the bills or drafts were made, dated and accepted at Boston, payable generally, and consequently payable every where, so that they are governed by the law of the place where they were made, as to their nature, validity, construction and effect ; because they can not be said to have been made with a view to the operation of the laws of any other particular place upon them. *Bank* v. *Colby*, 12 N. H. 520, and authorities ; *Stevens* v. *Norris*, 10 Foster 466 ; Story's Conflict of Laws, sec. 317.

There can, therefore, as we think, on general principles, be no doubt that a discharge under the Massachusetts insolvent laws, which would be a good defence in Massachusetts to a suit upon these bills or drafts, or to a suit upon a judgment rendered on them there, would be a good defence to a like suit here. *Hall* v. *Boardman*, 14 N. H. 38 ; *Betts* v. *Bagley*, 12 Pick. 579 ; *Stone* v. *Tebbetts*, 26 Maine 110 ; *Stevens* v. *Norris*, 10 Foster 466.

As a general rule, at common law the discharge of a contract by the law of the place where it is made, unless by its express terms made payable in another country, is a discharge every where, without reference to the domicil of the parties to it, whether citizens of the country of its origin, a citizen and a foreigner, or foreigners. Story's Conflict of Laws, sec. 340 ; *Mason* v. *Haile*, 12 Wharton 360 ; *Pattee* v. *Brown*, 5 East 124 ; *Robinson* v. *Bland*, 1 Wm. Blackstone 258 ; *Blanchard* v. *Russell*, 13 Mass. 1 ; *Smith, Admr.*, v. *Smith*, 2 Johns. 235 ; 2 Kent's Com. (3d ed.) 392, 393 ; *Ory* v. *Winter*, 16 Martin 277 ; *Sherrill* v. *Hopkins*, 1 Cowen 103 ; *Stevens* v. *Norris*, 10 Foster 466, and authorities. There are some conflicting decisions in Massachusetts, resting on an attempt to construe contracts payable generally as payable in the country of the payee or

holder, but they are to be regarded as anomalous, or overruled by the same court.

In respect to contracts between citizens of the different States of the American Union, the general rule is necessarily modified by the provision of the Constitution of the United States probibiting the several States from passing laws impairing the obligation of contracts, as the same has been authoritatively interpreted by the Supreme Court of the United States. And the decisions of that court very clearly establish the general doctrine that, by reason of it, no State insolvent law can constitutionally affect the rights of citizens of other States, or discharge the obligation of contracts to which they may be parties. The provision thus interpreted has the same binding effect and influence upon State courts as upon those of the United States.

The seventh section of the Massachusetts insolvent law, under which the discharge in this case was obtained, (Mass. Laws 1838, chap. 163, sec. 7,) provides for the full and complete discharge of the debtor; *first*, from all debts actually proved against the estate; *secondly*, from all debts founded on future contracts made within that commonwealth, or to be performed within the same; and *thirdly*, from all debts founded on future contracts, and due to persons who shall be resident within that Commonwealth at the time of the first publication of the notice of the issuing of the warrant in insolvency. The debt now sought to be recovered is founded upon contracts made within the Commonwealth of Massachusetts subsequent to the passage of that law, and therefore is clearly within the letter of the statute.

Admitting, then, that by the common law, without reference to the Constitution, the contracts having been made in Massachusetts, and payable generally, a discharge of them by the laws of that State would have been a good discharge everywhere, and that they were clearly within the language of the law under which the discharge now under consideration was obtained, the question recurs, whether, under the Constitution, as authoritatively interpreted, the discharge of the defendant Faxon in

Whitney *v.* Whiting.

insolvency, if pleaded in bar to the present suit brought in Massachusetts, or, what is in legal effect the same, to a suit upon the original bills or drafts on which the judgment here declared upon was rendered, brought there, would be a sufficient defence to such suit? It seems to us quite clear, upon principles settled by a great number of decisions, both in the State and United States courts, that it would not.

By the 10th section of the 1st article of the Constitution of the United States, it is, among other things, provided, that "no State shall pass any law impairing the obligation of contracts." It was long a question, elaborately discussed, whether, in consequence of this prohibition, any State possessed the power to enact an insolvent law, discharging the obligation of any kind of contracts, whether made previously or subsequently to its passage, by their own citizens or others, and wherever to be performed. After a variety of somewhat conflicting decisions in the various States, it was at length decisively determined in January, 1827, by a majority of the judges of the Supreme Court of the United States, after most learned and able argument on both sides, that the States might constitutionally pass such laws, operating only upon future contracts. Since that decision, State insolvent laws, discharging the obligation of certain future contracts, have been deemed everywhere constitutional, and the only difficulty has arisen in determining to what classes of contracts such laws may rightfully apply. The result of the numerous and often directly conflicting decisions of the various courts in the Union, would seem to us to be, that they may properly apply to all contracts made within the State by citizens thereof, unless negotiable and expressly stipulated to be elsewhere performed, and, without being in any way discredited, actually assigned to citizens of other States before the commencement of proceedings for a discharge and notice thereof; and that they may not apply to contracts made within the State, between a citizen thereof and a citizen of another State, unless perhaps where, by the express terms thereof, they are to be performed within the State where made; or to contracts not made

or to be performed within the State, unless made between those then, and afterwards continuing to be, citizens of the State.

With regard to those contracts to which such insolvent laws may not apply, it is considered that the State does not possess a jurisdiction, coëxtensive with the contract, over the parties, and that therefore the Constitution of the United States protects them from prospective as well as retrospective legislation. No State can introduce any system which shall extend beyond its own territorial limits and the persons who are subject to its jurisdiction. 3 Story on Const., secs. 1103, 1384; *McMullen* v. *Neil*, 4 Wheaton 209; *Baker* v. *Wheaton*, 5 Mass. 509; *Ogden* v. *Saunders*, 12 Wheaton 358.

The ground of the distinction is thus stated by Mr. Justice *Johnson,* in delivering the final opinion of the majority of the Court in *Ogden* v. *Saunders :* " A citizen of one State cannot be forced into the courts of another to have his rights settled ; the judgment to be passed there is to prostrate those rights. On the subject of those rights, the Constitution exempts him from the jurisdiction of the State tribunals, without regard to the place where the contract may originate. In the only tribunal to which he owes allegiance, the State insolvent laws cannot be carried into effect. The Constitution takes away the only ground on which ancient dominion over particular contracts can be claimed — that of sovereignty. The Constitution has produced such a radical modification of State power over even their own contracts in the hands of individuals, not subject to their jurisdiction, as to furnish ground for excepting the rights of such individuals from the power which the States possess over their own contracts and their own citizens."

This reasoning of the majority of the Supreme Court of the United States has been severely criticised by the Supreme Court of Massachusetts, in *Marsh* v. *Putnam,* 3 Gray 551, and is perhaps not entirely satisfactory, but its meaning is clear. The design is evident, to exclude generally contracts between citizens of different States from the operation of State insolvent laws.

It is useless to speculate upon the motive that may have in-

duced the framers of the Constitution to insert therein the clause under consideration ; but as Congress, by the 8th section of the First Article, were expressly vested with authority to regulate commerce among the several States, and to establish uniform laws on the subject of bankruptcies, it may well have been deemed necessary, in accordance with those provisions, to prohibit the States from interfering to discharge the obligation of contracts likely to result from that commerce. However this may have been, if the clause, as interpreted by the Supreme Court, is to have any practical force, it must be to protect citizens of the United States, resident in any State, against insolvent laws passed by States other than their own, which might injuriously affect their rights and interests under contracts with citizens of those States. It must be construed to prohibit the several States from enacting any law to discharge the obligation of all contracts made with their own citizens by those of other States, where the parties in other States have not voluntarily in some way waived their constitutional rights. We think this may perhaps be regarded as having been done by entering into a contract expressly to be performed in the State of the other contracting party ; and therefore, on well established general principles, subject to its laws, so far as its construction, validity and obligation are concerned, as well as by assenting to the proceedings in insolvency by proving the debt under the commission of insolvency. But, where the contract is made in one State, payable generally to a citizen of another, we understand the repeated decisions of the Supreme Court of the United States, as well as of that of Massachusetts and of several other States, all go to maintain that a discharge in insolvency of the contractor, obtained in the State of the contract, is no bar to a subsequent recovery upon such contract.

In *Ogden* v. *Saunders*, 12 Wheaton 213, Saunders, a citizen of Kentucky, brought an action of assumpsit in the District Court of Louisiana, against Ogden, then of New-Orleans, declaring upon certain bills of exchange drawn in 1806 by one Gordon, of Lexington, Kentucky, upon Ogden, then a citizen

Whitney *v.* Whiting.

and resident of New-York, in favor of Saunders, which had been accepted by Ogden in New-York, and protested for non-payment. Ogden afterwards obtained a discharge in New-York under their insolvent law, passed prior to his acceptance of the bills, and subsequently removed to Louisiana. The District Court of Louisiana, upon the verdict of a jury finding specially the above facts, directed a judgment for the plaintiff, holding the discharge under these circumstances no bar; and upon error brought, the Supreme Court of the United States affirmed the judgment of the court below, the purport of the adjudication being, to use the language of Mr. Justice *Johnson,* in delivering the opinion of the majority of the court, " that as between citizens of the same State, a discharge of a bankrupt by the laws of that State is valid as it affects posterior contracts; that as against creditors, citizens of other States, it is invalid as to all contracts."

Tried by the true rule, that the authority of any decision is coëxtensive only with the facts to which it applies, this case clearly decides that a contract made in one State, not in terms to be performed there, but payable generally to the holder, a citizen of another State, is not discharged by a certificate obtained in the State of the contract, as against the holder, residing in another State both at the time of the inception of the contract and of the discharge, which is exactly the case now before us.

In *Shaw* v. *Robbins,* 12 Wheaton 369, the plaintiff, a citizen and resident of Massachusetts, drew bills, payable to his own order, on the defendant, then a citizen and resident of New-York, not payable in terms in New-York, which were accepted there by the defendant, but not paid. The defendant obtained a discharge in New-York, and subsequently removed to Ohio, where suit was brought to recover the amount of the bills in their State court. That court held the discharge a good bar, but, upon appeal brought, the Supreme Court of the United States reversed the judgment. It is difficult to distinguish this case also from the one now before us.

In *Braynard* v. *Marshall,* 8 Pick. 194, it was holden that a note,

made in New-York, payable generally to the order of an agent of the plaintiff, temporarily resident in New-York, for goods of the plaintiff there sold to the defendant, and immediately indorsed to the plaintiff, who had ever been a citizen of Massachusetts, was not barred by a discharge of the defendant under the insolvent laws of Massachusetts. The same doctrine is recognized in the *Boston Type and Stereotype Foundry* v. *Wallack,* 8 Pick. 186, and in *Betts* v. *Bagley,* 12 Pick. 580.

In *Agnew* v. *Platt,* 15 Pick. 517, which was a suit upon a note made and payable in New-York, from a citizen of Massachusetts to a citizen of New-York, the true construction of the decision in *Ogden* v. *Saunders* was declared by Chief Justice *Shaw,* in delivering the opinion of the court, to be, that all State bankrupt or insolvent laws are *primâ facie* unconstitutional, as impairing the obligation of contracts, and that this effect is avoided only in case the debtor and creditor, the contracting parties, are domiciled in the State where such law already exists at the time of the contract. " The contract could not be discharged by the insolvent law of New-York, unless both the contracting parties were, at the time of the contract, inhabitants of that State."

In *Savage* v. *Marsh,* 10 Met. 594, which was an action upon a note made by the defendants, citizens of Massachusetts, and dated at Boston, payable generally to their own order, and by them indorsed to the plaintiffs, citizens of New-York, it was holden that a discharge of the defendants under the insolvent laws of Massachusetts was no bar to an action for the recovery of the amount due upon the note.

In *Fiske* v. *Foster,* 10 Met. 597, it was held, that where a bill of exchange was drawn in Maine by a citizen of that State, in favor of another citizen of that State, upon a citizen of Boston, and by him accepted at Boston, payable generally, it was not discharged by the insolvent laws of Massachusetts. *Dewey,* J., in delivering the opinion of the court, says : " This was directly a contract with a citizen of Maine, to pay him a certain sum of

money. Such contract is not discharged by the insolvent laws of Massachusetts.

In *Ilsley* v. *Merriam*, 7 Cushing 242, where a citizen of Massachusetts, in Boston, sold and delivered to the defendant, also a citizen of Boston, hay belonging to a citizen of Maine, but without disclosing his name, a subsequent discharge of the purchaser, under the insolvent laws of Massachusetts, was holden no bar in the courts of that State to an action by the owner for the price of the hay.

In *Clark* v. *Hatch*, 7 Cushing 455, it was holden that a note, dated and given in Massachusetts by a citizen of that State, for the rent of real estate situate there, but payable generally to a citizen of Connecticut, was not discharged by the discharge of the maker under the insolvent laws of Massachusetts. In their opinion the court say, " The cases of *Savage* v. *Marsh*, 10 Metcalf 594 ; *Fiske* v. *Foster*, 10 Metcalf 597, and subsequent cases, have settled the point that contracts between citizens of this State and citizens of another State are not affected by a discharge of the debtor under our insolvent laws, unless the creditor elects to prove his claim and take a dividend under those laws."

In *Stringer* v. *Foster*, 2 Story 387, it was held by the Circuit Court of the United States, that bills of exchange, drawn by citizens of Pennsylvania upon a citizen of Massachusetts, and by him accepted in Massachusetts, but not paid, could not be discharged by the insolvent laws of Massachusetts as to the acceptor. *Story*, J., said : " The settled doctrine of the Supreme Court of the United States is, that no State insolvent laws can discharge the obligation of any contract made in the State, except such contract is made between citizens of that State." The same doctrine was advanced by Mr. Justice *Baldwin* in *Woodhull* v. *Wagner*, Baldwin 300.

*Poe* v. *Duck*, 5 Md. 1, was a case in all essential features exactly like the present. The suit was upon a judgment recovered in Maryland upon a promissory note, made there and payable generally to a citizen of Pennsylvania. After the judg-

ment, the debtor had obtained a discharge under the insolvent laws of Maryland, and the question of its validity was raised in a subsequent trustee suit to enforce the judgment. After reviewing all the decisions, the court decided that the discharge obtained under those circumstances was inoperative to defeat the suit in Maryland, upon a judgment recovered in Maryland upon a note made there, and payable generally to a citizen of Pennsylvania.

In *Scribner* v. *Fisher*, 2 Gray 43, a majority of the justices of the Supreme Court of Massachusetts held, reversing the doctrine of *Agnew* v. *Pratt*, before cited, that a note, made in that State by a citizen thereof, payable, by its express terms, in that State to a citizen of New-York, was barred by a discharge under the Massachusetts insolvent laws, on the ground, it would seem, that no decision had been made by the Supreme Court of the United States expressly holding such an effect of a State insolvent law to be unconstitutional, and its unconstitutionality was not entirely clear. They also suggested that they understood *Parkinson* v. *Scoville*, 19 Wendell 150, to be to the effect that such a contract might be discharged by a State insolvent law. Mr. Justice *Metcalf* delivered a dissenting opinion, which has been in effect sustained by a majority of the Court of Appeals in New-York, in *Donelly* v. *Corbitt*, 3 Selden 500. In this latter case it was holden, by five judges against two, that a suit upon a judgment, recovered by the plaintiff in South-Carolina against the defendant, upon a note given in New-York, but payable at the Bank of South-Carolina, in Charleston, was not defeated by a discharge obtained in South-Carolina after its rendition there, the plaintiff being, at the date of the contract and afterwards, a citizen of New-York, and the defendant of South-Carolina. But this case does not appear to have been fully considered. The reasoning is far from satisfactory, and seems to rest entirely on the dicta of cases, wherein the general principle is enunciated that no State insolvent law can operate to discharge a contract between citizens of different States.

As before suggested, we are inclined to believe that the

doctrine of *Scribner* v. *Fisher* may be sustained, not on the ground upon which it is placed in the opinion of the Court, but on that of waiver; the citizen of another State being regarded as having voluntarily surrendered his constitutional extra territorial rights by having accepted a contract by its express terms to be executed in the State of his debtor. But the determination of this question is not necessary to that of the one before us. There are, so far as we have examined the authorities, two decisions expressly against the validity of the discharge in such case, and only one in its favor. Neither of the cases seems to have been very carefully or elaborately considered, and it will be sufficient to determine which is correct when that question is directly raised by the facts of a case before us for adjudication.

In *Marsh* v. *Putnam*, 3 Gray 551, it was holden by the Supreme Court of Massachusetts, upon full consideration and a review of all the decisions, that a contract made between citizens of Massachusetts, in Georgia, and to be performed there, both parties continuing citizens of Massachusetts down to the time of the proceedings in insolvency, was barred by a discharge under the laws of Massachusetts. There would seem to be no reason whatever why such a contract, having been broken, should not follow the general rule, both parties having ever been citizens of the State.

But neither of the questions to which we have last adverted have any other connection with that involved in the present case, than that they were supposed to depend on the proper construction of the same clause of the Constitution. By giving to that clause such reasonable construction as to protect citizens of the United States, resident in any State, creditors of those resident in other States, against the operation of the insolvent laws of the States of their debtors, in all cases where their constitutional privilege has not been in some way waived — and any other interpretation would seem to nullify or render entirely nugatory the constitutional provision — it is believed all or nearly all the well considered decisions of the various courts in the United States on this subject may be reconciled. If a discharge under

a State insolvent law be holden effectual to extinguish all contracts made within the State between its own citizens, unless those contracts, being negotiable by their express terms, are to be performed in other States, and, without having been discredited, have been actually assigned to citizens of other States prior to the proceedings resulting in such discharge; and if such discharge be holden inoperative to destroy contracts made within the State where it is granted, between citizens of that State and those of other States, unless the holders thereof have in some way waived their constitutional rights ; and likewise inoperative to defeat contracts made and to be performed without the State, unless made and continuing to exist between citizens of that State down to the period of the proceedings in insolvency — the true purpose and design of the constitutional inhibition would seem to be accomplished, and the sovereignty of the States, so far as consistent with the Constitution, vindicated.

In the present case, the contract was made in Massachusetts, by citizens of that State with citizens of the State of Maine, and was not by its terms to be performed in Massachusetts. It was, therefore, upon the express authority of the numerous decisions we have cited, clearly a case where the discharge obtained in Massachusetts would have been inoperative and ineffectual to defeat a suit upon the contract in that State. If invalid there, it must be equally so every where else.

According to the terms of the agreed case, there must, therefore, be judgment for the plaintiff, for the amount of the judgment declared on, and costs, unless, according to the provisions of the case, the defendant shall elect to contest, in the court below, the facts in regard to the ownership of the drafts at the time they were drawn and afterwards.

*Judgment for the plaintiffs.*